Joe P. FARINA, Appellant,

v.

CALVARY HILL CEMETERY, a Texas non-profit Corporation, Appellee.

No. 8522.

Court of Civil Appeals of Texas, Texarkana.

March 21, 1978.

Rehearing Denied April 25, 1978.

Richard L. Jackson, Shuford, Jackson & Miller, Dallas, for appellant.

Robert H. Mow, Jr., Barbara M. G. Lynn, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellee.

ODEN, Justice.

Joe P. Farina, appellant, sued Calvary Hill Cemetery, appellee, to rescind a real estate transaction and for damages. Calvary Hill Cemetery counterclaimed for recovery on a purchase money note and damages. The trial court, after disregarding certain jury findings, entered judgment for Calvary Hill Cemetery on the purchase money note in the amount of $136,657.47 and denied the parties' respective claims for rescission and damages. Joe P. Farina appealed from that portion of the judgment denying rescission which, if granted, would have been a bar to the claim on the purchase money note. Calvary Hill Cemetery lodged a cross-appeal complaining of the trial court's refusal to grant it judgment for damages in the amount of $1,081,038.00. The parties will be referred to as Farina and Calvary Hill.

In July, 1971, Calvary Hill owned certain property upon which a 302 unit apartment complex was located. Metropolitan Life Insurance Company was the beneficiary of a deed of trust lien on the property and improvements securing a $3,650,000.00 note. Calvary Hill had no personal liability on the note inasmuch as Metropolitan Life Insurance Company had waived its right to seek a deficiency judgment in the event the proceeds derived from a foreclosure sale were insufficient to discharge the note. In September, 1971, Farina purchased the buildings and improvements and entered into a forty-eight year ground lease on the land. The effective date of the transfer was August 15, 1971. The monetary consideration for the transfer was $50,000.00 cash, a $100,000.00 purchase money note, an agreement to make $50,000.00 in improvements, an agreement to pay ground rentals and the agreement by Farina to pay the balance owing on the $3,650,000.00 note held by Metropolitan Life Insurance Company. The real estate transaction was consummated by Calvary Hill executing a bill of sale to the buildings and improvements and a ground lease. Farina executed a note, security agreement, deed of trust and the ground lease. On November 3, 1971, Calvary Hill, at Farina's request, released, in writing, Farina from any personal liability to pay ground rentals under the ground lease. Farina defaulted in the payment of the Metropolitan Life Insurance Company note. Calvary Hill elected not to cure the default and the land and improvements located thereon were sold on September 3, 1974, at a substitute trustee's sale. Farina

was in possession of the apartment complex between August, 1971, and August, 1974.

Farina contends the real estate transaction consummated in September, 1971, should be rescinded because of a fraud perpetrated by agents of Calvary Hill. He alleges that his oral agreement with Calvary Hill was that he would have no personal liability as a result of the real estate transaction except for the payment of the $100,000.00 purchase money note and the making of $50,000.00 in improvements. The contract documents, except for the one releasing Farina from personal liability for the payment of ground rentals under the ground lease, contained no provision to that effect. Farina testified that he did not read the contract documents and that he relied upon Calvary Hill's integrity to make certain that the contract documents reflected the terms of the oral agreement. The jury found that (1) agents for Calvary Hill represented to Farina that the contract documents would contain a provision for no personal liability; (2) Farina relied upon such representation in entering into the real estate transaction; (3) the agents for Calvary Hill had no intention of complying with their representation; (4) Farina would have refused to execute the contract documents had he not relied on such representation; and (5) such representation was made to induce Farina to execute the contract documents. These findings were disregarded by the trial court and Farina's claim for rescission denied. The law presumes that a written agreement correctly embodies the parties' intentions, and is an accurate expression of the agreement the parties reached in prior oral negotiations. *Estes v. Republic National Bank of Dallas*, 462 S.W.2d 273 (Tex.1970). A party in an arms-length transaction is charged with the obligation of reading what he signs and, in the absence of a showing of trickery or artifice, he cannot avoid the consequences of the instruments he signs on the ground that he did not know what he was signing. *Thigpen v. Locke*, 363 S.W.2d 247 (Tex.1962); *Indemnity Insurance Co. of North America v. W. L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553 (1937). Farina and Calvary Hill

were dealing at arms-length. The fact that Farina is a Catholic and Calvary Hill is owned by the Roman Catholic Diocese of Dallas did not of itself create such a confidential relationship as to relieve Farina from his duty to read the contract documents. *Thigpen v. Locke*, supra. There is no evidence of active trickery or deceit in the record. In fact, Farina's attorney was furnished a copy of the contract documents well in advance of the date the transaction was consummated. The trial court did not err in disregarding the findings of the jury pertaining to fraud and entering judgment denying Farina's claim for rescission.

Calvary Hill contends the trial court erred in refusing to enter judgment in its favor against Farina for $1,081,038.00, which was the reasonable cash market value of the raw land at the time of foreclosure by the substitute trustee under the deed of trust securing the $3,650,000.00 note held by Metropolitan Life Insurance Company. Calvary Hill's contention does not take into account that the estate it lost as a result of the foreclosure was the reversionary interest it held as landlord under the ground lease as opposed to fee simple ownership of the land free of improvements and debts. Title to the buildings and improvements would revert to Calvary Hill at the expiration of the ground lease. Calvary Hill has a cause of action against Farina for breach of the contract of assumption. *Talley v. Howsley*, 142 Tex. 81, 176 S.W.2d 158 (1943). In cases where the breach of a contract of assumption results in foreclosure, the measure of damages, in the absence of a reasonable contractual method of ascertaining damages to the contrary, is the value of the estate which was lost by foreclosure at the time of foreclosure. *Talley v. Howsley*, supra. Calvary Hill as landlord under the ground lease held a reversionary interest in the land and improvements located thereon. *Big Lake Oil Company v. Reagan County*, 217 S.W.2d 171 (Tex.Civ. App. El Paso 1948, writ ref'd). The value of the reversionary interest lost through foreclosure in this case is the difference between the reasonable cash market value

of the land and improvements located thereon and the unpaid balance of the note held by Metropolitan Life Insurance Company at the time of foreclosure. By using this method for ascertaining damages, Calvary Hill will be reimbursed for what it actually lost, to-wit, its equity in the ground leased property. Farina had been released from personal liability for the payment of ground rentals. Calvary Hill neither volunteered, nor was it obligated, to make any payments on the Metropolitan Life Insurance Company note. The value of the buildings and improvements, though owned by Farina, should be taken into account in determining the value of the property because the buildings and improvements constitute a part of the reversionary estate. The unpaid balance on the note to Metropolitan Life Insurance Company should be taken into account because the property was encumbered by the deed of trust lien at the time the reversionary estate was created.

The portions of the judgment of the trial court denying all relief prayed for by Farina and awarding Calvary Hill $136,657.47 as recovery on the purchase money note are affirmed. The portion of the judgment denying Calvary Hill recovery on its claim for breach of contract of assumption is reversed and remanded for a new trial.